UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW STOBY,

                                    Petitioner,              9:05-CV-0997
                                                             (GTS/TWD)

             v.

ISRAEL RIVERA,

                                    Respondent.
_____

APPEARANCES:                                OF COUNSEL:


OFFICE OF SETH BUCHMAN                       SETH BUCHMAN, ESQ.
Counsel for Petitioner
20298 South Shore Road
Three Mile Bay, New York 13693


HON. ERIC T. SCHNEIDERMAN                    LISA E. FLEISCHMANN, ESQ.
Office of the Attorney General              Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271


THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

  This action has been referred to the undersigned by District Court Judge Glenn T.

Suddaby for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3(c).  Petitioner Andrew Stoby, a New York state prison inmate, has

commenced this habeas corpus proceeding, pursuant to 28 U.S.C. § 2254, challenging his

conviction.  For the following reasons, I recommend that the Court dismiss the petition.

## I.    THE HABEAS PETITION

On August 8, 2005, Petitioner, acting *pro se*, filed a petition for a writ of habeas corpus. (Dkt. No. 1.)  On February 6, 2007, counsel filed an amended petition on Petitioner's behalf. (Dkt. No. 27.)  Petitioner challenges the judgment entered on January 27, 2003, in Jefferson County Court convicting him, after a jury trial, of attempted assault in the first degree, assault in the second degree, reckless endangerment in the first degree, and criminal possession of a weapon in the third degree.  (Dkt. No. 27 at 1.)  Plaintiff was sentenced to an aggregate determinate prison term of fourteen years.  *Id.*   Petitioner's conviction was affirmed by the Appellate Division, Fourth Department, and leave to appeal to the Court of Appeals was denied. *People v. Stoby,* 771 N.Y.S. 2d 623 (N.Y. App. Div. 4th Dep't 2004); *leave denied* 2 N.Y.3d 807 (2004).

## II.    THE CLAIMS

Petitioner seeks relief on the following grounds:

1.    The verdict was based on insufficient evidence;

2.    The prosecution "failed to disprove justification defense by credible and sufficient evidence;"

3.    The trial court's justification instruction was flawed;

4.    The prosecutor committed misconduct during summation;

5.    Appellate counsel was ineffective; and

6.    Trial counsel was ineffective.

(Dkt. No. 27.)  The first two grounds were first asserted in Petitioner's original *pro se* petition. (Dkt. No. 1.)  The other grounds were first asserted in Plaintiff's amended petition, filed by

counsel. (Dkt. No. 27.)

Respondent argues that (1) the Appellate Division's rejection of Petitioner's legal insufficiency claim was not contrary to, or based on an unreasonable application of, clearly established federal law; (2) Petitioner's claim regarding the justification defense is procedurally barred and meritless; (3) Petitioner's third, fourth, fifth, and sixth claims are untimely; (4) Petitioner's third, fourth, fifth, and sixth claims are unexhausted; and (5) Petitioner's third, fourth, fifth, and sixth claims are meritless. (Dkt. Nos. 17-2 and 39.)

## III.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Underlying Incident

Petitioner stabbed Arien Mitchell in the back on the afternoon of April 24, 2002. (Transcript of Jury Trial ("T.") at 334:10-13, 337:10-338:7.) At the time of the incident, Mitchell was walking down the street with his friend Krashella McKnight. (T. at 308:3-14.) A car filled with men drove past them, doubled back, and stopped next to them. (T. at 335:17-336:7.) McKnight saw the car when it passed the first time and warned Mitchell that there might be trouble. (T. at 335:25-336:3.) When the car stopped, Petitioner got out, walked up to Mitchell, and said something to him. (T. at 336:6-8.) Mitchell could not understand what Petitioner said, but McKnight heard Petitioner ask Mitchell if Mitchell had "a problem with his locs." (T. at 336:6-8, 310:17-23.) According to Mitchell and McKnight, Petitioner then, without provocation, grabbed Mitchell's jacket and stabbed him in the back. (T. at 310:24-25, 329:10-14, 325:22-326:6.)

Petitioner's version of the incident is that he got out of the car to warn McKnight, with whom he was acquainted, that Mitchell was dangerous. (T. at 537:23-538:7.) He contends that

3

Mitchell pushed him and that Petitioner grabbed Mitchell's jacket to steady himself. (T. at 539:2-6.) Petitioner contends that he saw Mitchell start to raise up his shirt and pull a red object, which Petitioner believed was a gun, from his belt area. (T. at 545:15-22.) Believing that Mitchell intended to harm him, Petitioner "swung at" Mitchell with his pocket knife. (T. at 539:8-10.)

Mitchell ran to a nearby sandwich shop, where an employee called the police and an ambulance. (T. at 312:19-23, 392:12-22.) After the incident, Petitioner went home. (T. at 540: 8-10.)

The physician who treated Mitchell observed a stab wound four and a half centimeters deep in Mitchell's back between two and three centimeters to the right of his spine. (T. at 456:14-458:5.) Mitchell did not require stitches. (T. at 313:15-16.) He was hospitalized overnight and given a Darvocet tablet for his pain. (T. at 313:13-19, 463:16-24.)

## B. County Court Proceedings

On May 7, 2002, Petitioner was charged by indictment with attempted murder in the second degree, attempted assault in the first degree, assault in the second degree, reckless endangerment in the first degree, and criminal possession of a weapon in the third degree. (Dkt. No. 17-2 at 2.[1])

Jury trial began on December 2, 2002, in Jefferson County Court. (T. at 1.) Mitchell, McKnight, four eyewitnesses to the incident, a witness from the sandwich shop, the police officers who responded to the incident, a resident who found a knife on the sidewalk near the site

---

[1]     The page numbers cited for Respondent's memorandum of law refer to the page numbers in the original document rather than to those assigned by the Court's electronic filing system.

of the incident,[2] the officer who responded to the call regarding the knife, the doctors who treated

Mitchell, and the officer who processed evidence from the scene testified for the prosecution.  (T.

at 305-528.)

At the close of the prosecution's case, Petitioner moved to dismiss all counts of the

indictment for "lack of sufficient proof."  (T. at 529:16-531:5.)  Regarding the attempted second

degree murder charge, Petitioner's attorney argued that there was insufficient proof that

Petitioner intended to kill Mitchell.  (T. at 529:22-530:2.)  Regarding the attempted first degree

assault charge, Petitioner's attorney argued that there was insufficient proof that Petitioner

intended to cause serious physical injury or that he caused a serious physical injury.  (T. at 530:3-

7.)  Regarding the second degree assault charge, Petitioner's attorney argued that there was

insufficient proof that Petitioner intended to cause physical injury or that he caused substantial

pain.  (T. at 530:8-14.)  Regarding the first degree reckless endangerment charge, Petitioner's

attorney argued that there was insufficient proof that Petitioner intended or recklessly engaged in

contact that created a grave risk of death or an unjustifiable risk that Mitchell would die from

Petitioner's actions.  (T. at 530: 15-23.)  Finally, regarding the weapon charge, Petitioner's

attorney argued that "the proof to this point has been very limited as to whether or not a knife

was involved and whether or not [Petitioner] possessed it at the time of the incident."  (T. at

530:24-531:5.)  Petitioner's attorney did not make any specific argument regarding a defense of

justification.  The court reserved its decision on the motion to dismiss.  (T. at 533:12-13.)

Petitioner was the only witness for the defense.  (T. at 534:1-556:18.)  At the close of the

defense case, Petitioner's attorney renewed the motion to dismiss.  (T. at 557:14-15.)

---

[2]     Throughout this litigation the parties have agreed that this was not Petitioner's knife.

Petitioner's attorney did not assert any new grounds for the motion. *Id*. Petitioner's attorney did not make any specific argument regarding a defense of justification. *Id*. The court denied the motion. (T. at 557:20.)

Petitioner's attorney requested that the court instruct the jury on the justification defense. (T. at 557:25-558:2.) The court granted the motion over the prosecution's objection. (T. at 558:4-16.) The court gave counsel a proposed justification charge to examine. (T. at 563:9-11.) Neither party objected to the charge. (T. at 563:11-16.)

During closing arguments, Petitioner's attorney argued that the eyewitnesses' testimony was unreliable, that to the extent the eyewitnesses' testimony was reliable it supported Petitioner's version of the incident, that Mitchell's injury was not serious, and that Petitioner's actions were justified because he was afraid that Mitchell was going to shoot him. (T. at 570:11-589:3.)

The prosecution argued in closing that Petitioner, with the intent to kill, picked a fight with Mitchell and stabbed him in the back. (T. at 589:9-625:22.) The prosecutor referred to gangs four times during her summation. (T. at 601:6, 609:24-25, 619:25-620:2, 621:10-16.) She closed her summation by saying "I submit that you will find the People have . . . met our burden of proof . . . and I submit that you will render a verdict that refuses to permit street justice and that enforces the laws that protect all of us; a verdict that finds the defendant guilty of each and every count." (T. at 625:13-21.)

After closing arguments, the court conducted a charge conference in chambers. (T. at 626:17-629:21.) Defense counsel asked that the court add language regarding the justification defense to the criminal possession of a weapon charge. (T. at 627:2-7.) The court granted the

request over the prosecution's objection.  (T. at 628:2-14.)

The first substantive jury instruction that the jury heard was the attempted murder in the second degree charge.  (T. at 649:8-652:16.)  Immediately after reading that charge, the court stated:

> With respect to counts one, two, three, four and five, the defendant has raised the defense of justification, also known as self-defense. The defendant, however, is not required to prove that he was justified. The People are required to prove beyond a reasonable doubt that the defendant was not justified.  I will now explain our law's definition of the defense of justification as it applies to this case.
>
> Under our law, a person may use *deadly physical force* upon another individual when, and to the extent that he reasonably believes it to be necessary to defend himself from what he reasonably believes to be the use of or the imminent use of unlawful *deadly physical force* by such individual.

(T. at 652:17-653:9, emphasis added.)  The court explained the terms in the instruction and provided a great deal of detail about the justification defense.  (T. at 653:10-659:4.)  After charging the jury on justification, the court instructed the jury on the elements of attempted murder in the second degree.  (T. at 659:5-660:7.)  The court included "the defendant was not justified" as one of the elements of the crime.  (T. at 659:17-19.)  The court also included "the defendant was not justified" as an element of the other four crimes with which Petitioner was charged.  (T. at 664:22-24, 668:20-22, 671:22-24, 675:11-12.)  The court did not, however, repeat the full justification charge.  Thus, the only full justification charge the jury heard referred to "deadly physical force."

During deliberations, the jury asked for clarification regarding several of the jury instructions.  As is pertinent here, the jury requested a written copy of the jury instruction for the

7

attempted murder in the second degree charge. (T. at 699:16-700:8.) The judge informed

counsel that he would not provide the jury with the written instruction, but would read the

attempted murder in the second degree instruction, including the language regarding justification,

to the jury again. (T. at 700:19-701:1.) Counsel did not object.

The court reread the attempted murder in the second degree instruction to the jury. (T. at

701:13-705:10.) The court then stated that "[w]e have given you the instruction as to

justification or the use of deadly force or self-defense of a person that applies to all of the counts

in this Indictment. And I'm going to read the instructions as it relates to justification once

again." (T. at 705:11-17.) The court read the entire justification charge to the jury again. (T. at

705:17-712:1.)

The jury deliberated for about a half hour after being reinstructed. (T. at 713:11-12.) The

jury found Plaintiff not guilty of attempted murder in the second degree and guilty of the other

charges. (T. at 713:14-715:5.)

On January 27, 2003, Petitioner was sentenced to (1) a determinate sentence of fourteen

years for attempted assault in the first degree; (2) a concurrent five year sentence for assault in

the second degree; (3) a concurrent indeterminate two to four year sentence for reckless

endangerment; and (4) a concurrent indeterminate three to six year sentence for criminal

possession of a weapon in the third degree. (Sentencing Transcript at 8:15-9:19.)

## C.    Direct Appeal

On direct appeal, Petitioner argued that (1) the weight and sufficiency of the credible

evidence established that the People failed to disprove Petitioner's justification defense beyond a

reasonable doubt; (2) the People's proof that Petitioner intended to cause Mitchell serious

physical injury was insufficient and outweighed by credible evidence to the contrary; and (3) the sentence imposed was harsh and excessive. (State Court Records, Ex. A.)[3] Petitioner's brief also referred to "the highly prejudicial and baseless implication that the incident at bar was gang-related . . . ." *Id.* In response, the People argued that (1) the jury's verdict was supported by credible evidence; (2) the verdict finding Petitioner guilty of attempted assault in the first degree was supported by the trial evidence; and (3) the sentence imposed was appropriate. (State Court Records, Ex. B.)

The Supreme Court of New York, Appellate Division, Fourth Department, affirmed the verdict on February 11, 2004. *People v. Stoby*, 771 N.Y.S. 2d 623 (N.Y. App. Div. 4th Dep't 2004). The Fourth Department found that Petitioner

> failed to preserve for our review his contention that the evidence is legally insufficient to disprove his justification defense inasmuch as his motion to dismiss was not specifically directed at the alleged error advanced on appeal. Contrary to [Petitioner]'s further contention, the verdict is not against the weight of the evidence in that respect.

*Id.* at 624 (citations and punctuation omitted). Regarding Petitioner's second argument, the Fourth Department concluded that "the evidence that [Petitioner] swung a knife and stabbed the victim in the back is legally sufficient to establish that he intended to cause serious physical injury. Indeed, [Petitioner] admitted that he had a knife in his hand when he approached the victim." *Id.* at 625. Regarding Petitioner's third argument, the Fourth Department stated that "we reject [Petitioner]'s contention that the sentence imposed on the conviction of attempted assault in the first degree is unduly harsh and severe." *Id.*

The New York Court of Appeals denied leave to appeal on May 4, 2004. *People v. Stoby,*

---

[3] The state court records were filed traditionally by Respondent on March 25, 2006.

2 N.Y.3d 807 (2004).

### D. Proceedings in this Court and State Collateral Proceedings

Petitioner, acting *pro se*, filed his original petition in this Court on August 8, 2005. (Dkt. No. 1.) Petitioner asserted two grounds for his petition: (1) "Due Process and Fair trial denied based on insufficient evidence;" and (2) "The People failed to disprove justification defense by credible and sufficient evidence." *Id*. at 4.[4]

On March 20, 2006, attorney Seth Buchman filed a notice of appearance on behalf of Petitioner. (Dkt. Nos. 14 and 15.) During a telephone conference on March 27, 2006, Magistrate Judge George H. Lowe gave Mr. Buchman permission to file a motion to amend or a traverse within thirty days. The Court's minutes note that "Mr. Buchman may file a motion for a stay if this matter is taken to state court for exhaustion of any remaining state court remedies." Mr. Buchman requested and received an extension of time to May 15, 2006 to file a motion to amend. (Dkt. No. 20.)

Mr. Buchman filed the motion to amend. (Dkt. No. 21.) The Court granted the motion on December 13, 2006. (Dkt. No. 23.) The amended petition was filed on February 6, 2007. (Dkt. No. 27.) The amended petition reasserted the grounds in the original petition. *Id*. ¶¶ 11-12. The amended petition also asserted new grounds: (1) "the justification charge was incomplete and assumed that deadly force was used. Indeed, the charge was read after the attempted murder count and not after the other counts." *Id*. ¶ 19; (2) the prosecutor's summation was unduly prejudicial because she referred to gangs and street justice and talked extensively about "what

---

[4] The page numbers cited for the original petition refer to the page numbers assigned by the Court's electronic filing system.

could have happened were the wound a different wound." *Id*. ¶¶ 20-25; (3) appellate counsel was ineffective because he failed to raise the issue of the jury charge, the summation, or ineffective assistance of trial counsel and failed to argue that trial counsel's motion to dismiss encompassed the justification defense. *Id*. ¶¶ 28-30; and (4) trial counsel was ineffective. *Id*. ¶ 32-35.

Mr. Buchman requested that the Court stay the proceedings to allow Petitioner to exhaust his state court remedies. (Dkt. No. 26.) On April 9, 2007, over Respondent's objection, the Court granted the motion to stay. (Dkt. Nos. 31-32.) Mr. Buchman was directed to file a status report every sixty days. (Dkt. No. 32 at 3.) Over a year passed without Mr. Buchman filing any status reports. On August 8, 2008, the Court issued a text order directing Mr. Buchman to file a status report within one week. When Mr. Buchman did not respond, the Court lifted the stay. (Dkt. No. 34.)

Respondent responded to the amended petition on January 22, 2009. (Dkt. Nos. 37-40.) Respondent's answer asserted, *inter alia*, that the newly raised grounds were untimely. (Dkt. No. 37 ¶ 8.) On June 2, 2009, after briefing from both parties and a telephone conference, this Court stayed the action once more to allow Petitioner another opportunity to exhaust his state court remedies.

On June 4, 2010, the Jefferson County Court denied Plaintiff's motion to vacate the judgment. (Dkt. No. 58-1.) The court stated that:

> The . . . first . . . alleged Constitutional violation is that this Court's
> justification charge was not complete. This Court found the charge
> to be satisfactory at trial and is not persuaded otherwise. Moreover,
> this Court must deny a motion to vacate a judgment when the record
> was sufficient to raise an issue and [Petitioner] failed to raise the

issue on appeal . . . The trial record was sufficient for [Petitioner] to raise this issue on appeal and [he] failed to do so. The . . . motion respecting this Court's justification charge is denied.

The . . . second . . . alleged Constitutional violation is that the Prosecutor's closing remarks amounted to prosecutorial misconduct . . . . At trial, this Court found the Prosecutor's remarks to be appropriate comment on the evidence presented. Furthermore, the trial record was sufficient for [Petitioner] to raise this issue on appeal and [he] failed to do so . . . . [Petitioner's] motion respecting the Prosecutor's trial conduct is denied.

Finally, [Petitioner] has identified and alleged the ineffective assistance of his trial and appellate counsel as Constitutional violations. This Court has carefully reviewed the allegations with respect to both claims of ineffective assistance of counsel. This Court can find no merit in either claim. [Petitioner's] trial counsel performed admirably with timely objections, aggressive cross-examinations, and well reasoned arguments. [Petitioner] was convicted on the evidence. [Petitioner's] appellate counsel presented strong arguments focused on the issues most likely to gain reversal. [Petitioner's] conviction was upheld on the evidence and the law. [Petitioner's] motion is denied in its entirety.

*Id*.

The Appellate Division denied Petitioner's motion for leave to appeal on July 8, 2011.

(Dkt. No. 71-1.)

Judge Lowe conducted a telephone conference on September 8, 2011. The parties informed the Court that they did not intend to file any further papers. The Court lifted the stay. Judge Lowe retired on February 9, 2012. This case was reassigned to me on February 10, 2012.

(Dkt. No. 72.)

## IV. <u>ANALYSIS</u>

### A. **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year

statute of limitations applies to a petition for a write of habeas corpus challenging the judgment of a state court.  28 U.S.C. § 2244(d) (2006).  Before filing in federal court, a petitioner must generally exhaust state court remedies by 'fairly presenting' the issues in state court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  If the petition is timely and the issues have been exhausted, the federal court turns to the merits of the petitioner's claims.

Under AEDPA, a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law.[5] *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme

---

[5]     To make this determination, the court examines three "clues": (1) the face of the state-court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances. *Jimenez*, 458 F.3d at 145 n. 16.

Court case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000). A state court unreasonably applies federal law when the state court correctly identifies

the governing legal rule in a particular case but applies the rule to the facts in an "objectively

unreasonable" manner. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Although "[s]ome

increment of incorrectness beyond error is required" in order to grant a federal habeas

application, that increment "need not be great; otherwise, habeas relief would be limited to state

court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221

F.3d 100, 111 (2d Cir. 2000); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006).

The state court's determination of a factual issue is presumed to be correct, and the petitioner has

the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254

(e)(1) (2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884

(2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### B.  Sufficiency of the Evidence Regarding Attempted Assault in the First Degree

Petitioner argues that there was insufficient evidence to convict him of attempted assault

in the first degree.[6]  (Dkt. No. 28-2 at 10-14.)  Respondent concedes that Petitioner's claim

---

[6]      Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District
Courts requires habeas petitioners to "specify all the grounds for relief available to the petitioner"
and "state the facts supporting each ground."  "Rule 2(c) [ ] demand[s] that habeas petitioners plead
with particularity."  *Mayle v. Felix*, 545 U.S. 644, 645 (2005).  The original petition listed the first
ground as "Due Process and Fair Trial denied based on insufficient evidence."  (Dkt. No. 1 at 4.)
For the facts supporting this ground, the original petition directed the reader to an attached
memorandum of law.  *Id*.  In the attached memorandum of law, Petitioner argued that there was
insufficient evidence to support his conviction for attempted assault in the first degree.  *Id*. at 21.
The attached memorandum of law did not argue that there was insufficient evidence to support
Petitioner's convictions for assault in the second degree, reckless endangerment in the first degree,
or criminal possession of a weapon in the third degree.  The amended petition states that "in
pleading ground one of the original petition . . . the supporting facts read 'see attached
memorandum.'  The facts alleged in the memorandum referred to in the original petition were of the

regarding the sufficiency of the evidence is timely and exhausted.  (Dkt. No. 17-2 at 14-16.)  This issue was determined on the merits in state court proceedings.  There, the Appellate Division rejected Petitioner's argument, stating that:

> Defendant contends that . . . the evidence is legally insufficient to establish that he attempted to cause serious physical injury.  We reject that contention.  Intent may be inferred from defendant's conduct and the surrounding circumstances.  In order to be found guilty of attempting to commit a crime, a defendant must have engaged in conduct that came dangerously near commission of the completed crime.  Viewing the evidence in the light most favorable to the People, we conclude that the evidence that defendant swung a knife and stabbed the victim in the back is legally sufficient to establish that he intended to cause serious physical injury.  Indeed, defendant admitted that he had a knife in his hand when he approached the victim.

*Stoby*, 771 N.Y.S. 2d at 624.

Because the issue was determined on the merits in the state court proceedings, this Court must determine whether the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (2006).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime(s) with which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29

---

whole trial, [ ] not a discreet portion [ ] thereof.  Thus, Petitioner asks the Court to examine the whole factual record for due process and fair trial issues."  (Dkt. No. 27 at 3.)  The memorandum of law submitted in support of the amended petition repeats verbatim the argument regarding sufficiency of the evidence from the original memorandum of law.  (Dkt. No. 1 at 21-25; Dkt. No. 28-2 at 10-14.)  Thus, Petitioner has not specifically claimed that there was insufficient evidence to support his convictions on the other charges or stated facts supporting such an argument.  Accordingly, the undersigned has not addressed any such claim.

(2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled habeas relief only if "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995). The burden on a habeas petitioner challenging the sufficiency of the evidence is "very heavy." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319. The "assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330. The relevant inquiry is "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67 (1984) (citing *Jackson, supra* ) (other citations omitted).

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citing *Quartararo*). Under New York law, a person is guilty of assault in the first degree when, with intent to cause

serious physical injury[7] to another person, he causes such injury to such person by means of a deadly weapon or a dangerous instrument.[8]  N.Y. Penal Law § 120.10 (McKinney 2009).  A person is guilty of attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  N.Y. Penal Law § 110.00 (McKinney 2009). The person's conduct must come "very near" or "dangerously near" completion of the object crime before criminal liability for attempt may be imposed.  *People v. Mahboubian*, 74 N.Y.2d 174, 190 (1989).

Petitioner argues that there was insufficient evidence that he intended to cause serious physical injury to Mitchell.  (Dkt. No. 28-2 at 12-14.[9])  Specifically, he points to (1) "McKnight's lack of testimony as to what was going on between Petitioner and Mr. Mitchell;" (2) the fact that Petitioner used only a "single thrust with a little pocketknife;" (3) the fact that Petitioner did not follow Mitchell or do him any additional harm; (4) a lack of evidence about intent; and (5) the insignificance of the wound itself, which did not require stitches.  *Id.* at 13.

None of these arguments meet Petitioner's heavy burden of showing that no rational trier

---

[7]     "Serious physical injury" is physical injury that creates a "substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."  N.Y. Penal Law § 10.00(10) (McKinney 2009).

[8]     A "deadly weapon" includes a "switchblade knife."  N.Y. Penal Law § 10.00 (12) (McKinney 2009).  A "dangerous instrument" is any "instrument, article or substance . . . which, under the circumstances . . . is readily capable of causing death or serious physical injury."  N.Y. Penal Law § 10.00 (13) (McKinney 2009).

[9]     References to page numbers in citations to Petitioner's Memorandum of Law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

of fact could have found proof of guilt beyond a reasonable doubt. The jury heard evidence that Petitioner sought out Mitchell by directing that the car in which he was a passenger double back and stop next to Mitchell and McKnight. (T. at 335:17-336:7.) The jury heard evidence that Petitioner then directly approached Mitchell. (T. at 336:6-8.) The jury heard evidence that Petitioner did all of the talking during his confrontation with Mitchell. (T. at 336:6-8, 312:17-23.) The jury heard evidence that neither Mitchell nor McKnight responded verbally or through action before Petitioner stabbed Mitchell. (T. at 310:24-25, 325:22-326:6.) The jury heard evidence that Petitioner used a pocket knife with a three-inch blade to stab Mitchell. (T. at 539, 545.) This evidence was sufficient for a reasonable trier of fact to conclude that Petitioner came "dangerously near" causing serious physical injury to Mitchell by means of a deadly weapon or a dangerous instrument, with intent to do so. The Appellate Division reasonably applied clearly established federal law when it determined that there was sufficient evidence to find Petitioner guilty of attempted assault in the first degree. Therefore, I recommend that the Court deny Petitioner's petition on this ground.

### C. Justification Defense

Petitioner argues that the prosecution "failed to disprove justification defense by credible and sufficient evidence." (Dkt. No. 27 at 2.) Respondent concedes that this claim is timely and exhausted. (Dkt. No. 17-2 at 14-16.) Respondent argues, however, that the claim is procedurally barred and meritless. (Dkt. No. 17-2 at 24-30.) Respondent is correct.

Generally, a federal court may not reach the merits of a petitioner's habeas claim if the state courts' rejection of the claim rested "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729

18

(1991). "To determine whether a state procedural bar is adequate to support the judgment, a federal habeas court should look to whether the state rule at issue is firmly established and regularly followed." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008).

Here, the Appellate Division found that Petitioner "failed to preserve for our review his contention that the evidence is insufficient to disprove his justification defense inasmuch as his motion to dismiss was not specifically directed at the alleged error advanced on appeal." *Stoby*, 771 N.Y.S. 2d at 624.

Under New York law, "in order for a criminal defendant to preserve, for appellate review, a question of law as to the sufficiency of evidence he must make a timely motion to dismiss that is 'sufficiently specific' to alert the trial judge to the substance of his argument." *People v. Gray*, 86 N.Y.2d 10, 19-21 (1995). This rule is firmly established and regularly followed. *Garvey v. Duncan*, 485 F.3d 709, 713-20 (2d Cir. 2007). Thus, the state courts' rejection of Petitioner's claim rested on a state law ground that is independent of the federal question and adequate to support the judgment.

When, as here, the state court bases its decision on an independent and adequate state procedural bar, a petitioner may only seek habeas review if he or she shows "cause for the default and prejudice resulting therefrom," *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995), or that he or she is actually innocent, *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006).

Petitioner argues that there was no default at all because in "the motion to dismiss, counsel specifically use[d] the language without justification or 'unjustified.'" (Dkt. No. 27 ¶ 29.) Thus, Petitioner argues that trial counsel did, in fact, preserve this issue for appeal by using

"the language without justification or 'unjustified.'" For this proposition, Petitioner cites page 530 of the trial transcript. *Id*. There, trial counsel stated that:

> [A]s to the Reckless Endangerment in the First Degree, I don't believe that the conduct as shown by the testimony of Mr. Stoby - - if taken entirely on the People's behalf - - can show that he intended or recklessly engaged in contact that created a grave risk of death or . . . an unjustifiable risk that a person could die from his actions.

(T. at 530:15-23.)

The quoted language does not support Petitioner's argument. It does not show that trial counsel moved to dismiss on the ground that the People failed to disprove Petitioner's justification defense beyond a reasonable doubt. Rather, trial counsel appears to have been referring to the elements of the crime of reckless endangerment in the first degree. These elements include a requirement that the defendant "engage[d] in conduct which creates a substantial, unjustifiable, and grave risk of death to another person." (T. at 669:11-670:9.) It is notable that trial counsel did not use the words "without justification" or "unjustified" as he argued that the trial court should dismiss the other charges against Petitioner. (T. at 529:19-531:5.) Objections far clearer and more on-point than trial counsel's here have been found insufficient to preserve issues under New York state law. *See Gutierrez v. Smith*, __ F.3d __, 2012 U.S. Dist. LEXIS 25309, 2012 WL 6123764 (2d Cir. Dec. 11, 2012) (citations omitted). (trial counsel's motion to dismiss a depraved indifference murder charge on the ground that "as a matter of law, . . . there [was] insufficient evidence to prove a prima facie case" was deemed "just a general objection to the legal sufficiency of the evidence at trial" and thus did not preserve issue of whether the evidence was legally insufficient to support the petitioner's conviction for depraved indifference murder). Thus, Petitioner has not shown that no default occurred.

Further, Petitioner has not established cause for the default. "There are two related ways to establish 'cause.' First, the cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule . . . . Second, futility may constitute cause where prior state case law has consistently rejected a particular constitutional claim." *Gutierrez*, 2012 WL 6123764, at *6 (citations omitted). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally ineffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (citations and punctuation omitted).

Petitioner has not argued that officials interfered in a way that made compliance impracticable, that a factual or legal basis for a claim was not reasonably available to trial counsel, or that trial counsel was ineffective for failing to specifically argue that the indictment should be dismissed due to lack of evidence negating the justification defense. Even if Petitioner had argued that trial counsel was ineffective for failing to argue that the indictment should be dismissed due to lack of evidence negating the justification defense, that argument would be unavailing. As discussed below, Petitioner's ineffective assistance of trial counsel claim is meritless. Thus, Petitioner has not demonstrated cause for his procedural default.

As a result of Petitioner's failure to show cause for his procedural default, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental miscarriage of justice, federal habeas relief

is unavailable as to procedurally barred claims unless both cause and prejudice are established. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Absent cause and prejudice, Petitioner may only overcome the state procedural bar if he shows that he is actually innocent. In order to show actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. The habeas court makes the determination of actual innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and the evidence tenably claimed to have been wrongly excluded or to have become available after the trial." *Id*. at 328.

Here, as discussed above, there was sufficient evidence at trial for a reasonable juror to find Petitioner guilty beyond a reasonable doubt. Petitioner has not directed this Court's attention to any evidence that was illegally admitted or wrongly excluded. Mr. Buchman informed the Court at one point that when he was retained he contacted McKnight, who told him that she had lied on the stand because she was afraid of Mitchell "and his gang." (Dkt. No. 43-2 ¶¶ 8-9.) Mr. Buchman wrote to the prosecutor, who said that she would prosecute McKnight for perjury if she changed her story. *Id*. ¶ 10. McKnight said that she wanted to proceed despite that fact. *Id*. ¶ 11. Thereafter, the phone number Mr. Buchman had for McKnight was disconnected. *Id*. ¶ 12. Petitioner has never provided this Court with any further information about this potential new evidence. Therefore, Petitioner has not shown that he is actually innocent and the Court cannot address the merits of his procedurally defaulted claim.

Even if this Court addressed this claim on its merits, Petitioner would not be entitled to habeas relief. For the reasons discussed above with regard to the sufficiency of the evidence

supporting Petitioner's conviction for attempted assault in the first degree, the record shows that a rational trier of fact could have concluded that Petitioner's actions were not legally justified. Therefore, I recommend that the Court deny the petition on these grounds as procedurally barred or, in the alternative, as meritless.

### D.    Justification Instruction

Petitioner claims that he is entitled to habeas relief because the trial court's "justification charge was incomplete and assumed that deadly force was used." (Dkt. No. 27 ¶ 19.) Respondent argues that habeas relief is not warranted on this ground because (1) the claim was not timely asserted; (2) the claim is unexhausted; and (3) the claim is without merit. (Dkt. No. 39 at 4-10.[10])  I will address only the first argument, as it is dispositive.

When Petitioner sought, through counsel, to amend his petition, Respondent opposed the motion, in part, on the ground that any newly raised claims would be untimely. (Dkt. No. 22-2.) In granting Petitioner's motion to amend, the Court did not reach the merits of Respondent's timeliness argument. (Dkt. No. 23.)  Respondent now reasserts the argument that the claim regarding the justification instruction is untimely. (Dkt. No. 39 at 4-5.)

Under AEDPA, a one-year statute of limitations applies to applications for writs of habeas corpus. 28 U.S.C. § 2244(d) (2006). Timeliness is thus a concern when a habeas petitioner amends his or her petition. Federal Rule of Civil Procedure 15 governs the amendment of habeas petitions. 28 U.S.C. § 2242 (2006); Fed. R. Civ. P. 81(a)(4); Habeas Corpus Rule 11. Regarding timeliness, Rule 15 states that an amendment "relates back to the date of the original

---

[10]    Citations to page numbers in Respondent's memorandum of law regarding the amended petition refer to the page numbers in the original document.

pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Until 2005, there was split of authority in the federal appellate courts regarding the definition of "conduct, transaction, or occurrence" in the habeas context. *See Mayle*, 545 U.S. at 653-54 (collecting cases). In the minority view, adopted by the Seventh Circuit and the Ninth Circuit, any claims arising from a habeas petitioner's trial, conviction, or sentence arose from the same "conduct, transaction, or occurrence." *Felix v. Mayle*, 379 F.3d 612, 614 (9th Cir. 2004); *Ellzey v. United States*, 324 F.3d 521, 525-27 (7th Cir. 2003). The majority of circuits to address the issue, conversely, allowed "relation back only when the claims added by the amendment ar[o]se from the same core facts as the timely filed claims, and not when the new claims depend[ed] upon events separate in 'both time and type' from the originally raised episodes." *Mayle*, 545 U.S. at 657. For example, the Tenth Circuit held that claims of ineffective assistance of trial counsel did not relate back to timely claims regarding errors in a presentencing report and at sentencing because they were "totally separate and distinct in both time and type." *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000).

In *Mayle*, the Supreme Court affirmed the majority view and rejected the broad definition of "conduct, transaction, or occurrence" employed by the Seventh and Ninth Circuits. *Mayle*, 545 U.S. at 650. The Court stated that "Congress enacted AEDPA to advance the finality of criminal convictions . . . . To that end, it adopted a tight time line . . . . If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id*. at 662. Rather,

the Court held, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id*. at 659. In determining the core of operative facts, courts should focus on what facts would be needed to determine the merits of the claims rather than on the facts that had to occur for the claims to ripen. *Id*. at 661. *Mayle* itself provides a good illustration of this distinction. The petitioner in *Mayle* argued that his timely Confrontation Clause claim regarding the use of videotaped witness testimony and his later-asserted claim that police violated his right against self-incrimination both arose from a common core of operative facts because he had no actionable claim regarding either issue before the statements were introduced at trial. *Id*. at 660. Thus, he argued, the trial itself was the common core of operative fact. *Id*. The Court rejected that argument, noting that "the essential predicate for his self-incrimination claim was an extrajudicial event, *i.e.*, an out-of-court police interrogation. The dispositive question in an adjudication of that claim would be the character of [his] conduct, not in court, but at the police interrogation, specifically, did he answer voluntarily or were his statements coerced." *Id*. at 661. Thus, the Court held, the later-asserted police interrogation claim did not share a common core of operative facts with the petitioner's timely claim regarding the use of the videotaped witness testimony at trial.

Here, Petitioner's timely original petition asserted two claims: (1) that the evidence was insufficient to support his conviction for attempted assault in the first degree; and (2) that the evidence was insufficient to overcome his justification defense. (Dkt. No. 1.) Neither of those claims rested on, or even mentioned, the trial court's justification charge. The issue of whether the evidence presented at trial was legally sufficient to support Petitioner's conviction does not share a common core with Petitioner's contention that the justification charge was flawed.

25

Accordingly, the claim does not relate back to the filing date of original petition and is barred by the one-year statute of limitations. Therefore, I recommend that the Court dismiss Petitioner's claim regarding the jury charge as untimely. In light of this recommendation, I decline to address the merits of Petitioner's claim.

### E.     Prosecutorial Misconduct

In his amended petition, Petitioner claims that the prosecutor engaged in misconduct by referring repeatedly to gangs in her summation. (Dkt. No. 27 ¶¶ 21-23.) Respondent argues that habeas relief is not warranted on this ground because (1) the claim was not timely asserted; (2) the claim is unexhausted; and (3) the claim is without merit. (Dkt. No. 39 at 4-6, 10-12.) I will address only the first argument, as it is dispositive.

As discussed above, Petitioner's prosecutorial misconduct claim is timely only if it shares a common core of operative facts with one of Petitioner's original claims. It does not. Petitioner's original claims rest on the sufficiency of the evidence presented at trial. Petitioner's prosecutorial misconduct claim rests on what the prosecutor said in her summation. These claims are distinct. Accordingly, Petitioner's prosecutorial misconduct claim does not relate back to the filing of the original petition and is barred by the one-year statute of limitations. Therefore, I recommend that the Court dismiss Petitioner's prosecutorial misconduct claim as untimely.

### F.     Ineffective Assistance of Appellate Counsel

In his amended petition, Petitioner claims that his appellate counsel rendered ineffective assistance by failing to raise the jury charge and summation issues on appeal and failing to argue that trial counsel's motion to dismiss encompassed the justification defense. (Dkt. No. 27 ¶¶ 28-29.) Respondent argues that habeas relief is not warranted on this ground because (1) the claim

was not timely asserted; (2) the claim is unexhausted; and (3) the claim is without merit. (Dkt. No. 39 at 4-6, 12-16.) I will address only the first argument, as it is dispositive.

As discussed above, Petitioner's ineffective assistance of appellate counsel claims are timely only to the extent that they share a common core of operative facts with one of Petitioner's original claims. They do not share such a common core. Petitioner's original claims rest on the sufficiency of the evidence presented at trial. Petitioner's ineffective assistance of appellate counsel claims rest on what counsel did during the course of the appeal. These claims are distinct. Accordingly, Petitioner's ineffective assistance of appellate counsel claims do not relate back to the filing of the original petition and are barred by the one-year statute of limitations. Therefore, I recommend that the Court dismiss Petitioner's ineffective assistance of appellate counsel claims as untimely.

### G.      Ineffective Assistance of Trial Counsel

In his amended petition, Petitioner claims that trial counsel rendered ineffective assistance by failing to object to a question that the prosecutor asked Petitioner which assumed that Petitioner had the knife in his hand when he approached Mitchell, failing to object to the justification jury charge, and eliciting testimony from Mitchell that he did not carry a gun. (Dkt. No. 27 ¶¶ 32, 34-35.) Respondent argues that habeas relief is not warranted on this ground because (1) the claim was not timely asserted; (2) the claim is unexhausted; and (3) the claim is without merit. (Dkt. No. 39 at 4-6, 16-21.)

It is at least arguable that Petitioner's belatedly-asserted ineffective assistance of trial counsel claim relates back to the timely sufficiency of the evidence claim because the jury could have relied on the evidence that Petitioner had the knife in his hand and that Mitchell was

unarmed to convict Petitioner. Petitioner exhausted this claim in the state courts after Respondent

asserted that the claim was unexhausted. Therefore, I will address the merits of this claim.

The state courts rejected Petitioner's claim of ineffective assistance of trial counsel,

finding that Petitioner's "trial counsel performed admirably with timely objections, aggressive

cross-examinations, and well reasoned arguments." (Dkt. No. 58-1.) This decision on the merits

was not contrary to clearly established federal law.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance

of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an

objective standard of reasonableness, measured in the light of prevailing professional norms; and

(2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional

performance, the outcome of the proceeding would have been different. *Strickland v. Washington*,

466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles

that govern claims of ineffective assistance of counsel" were established in *Strickland.)*. There is

a strong presumption that counsel's conduct fell within the wide range of reasonable assistance

and that counsel's actions constituted sound trial strategy under the circumstances. *Cuevas v.

Henderson*, 801 F.2d 586, 589-90 (2d Cir. 1986).

Here, trial counsel's representation did not fall below an objective standard of

reasonableness. Trial counsel pursued a clear and vigorous defense strategy throughout the case.

His opening statement introduced theories of justification and reasonable doubt as to intent and

the seriousness of Mitchell's wound. (T. at 302-04.) He elicited testimony that Mitchell was not

in a great deal of pain and that the wound was not sufficiently large or deep to cause any great damage. (T. at 321-28, 464-67, 469, 511-16.) He effectively cross-examined the police witnesses to highlight a lack of forensic testing. (T. at 446-50, 478-82.) Finally, he forcefully argued in his summation that the prosecution failed to meet its burden of proof and that Petitioner acted in self-defense. (T. at 570-89.) Further, there is no showing that Petitioner was prejudiced. Therefore, I recommend that the Court deny Petitioner's claim of ineffective assistance of trial counsel.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the amended petition for a writ of habeas corpus (Dkt. No. 27) be **DENIED** and **DISMISSED**. I find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (2006) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, I recommend that no certificate of appealability issue with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  December 27, 2012
        Syracuse, New York

                                            Thérèse Wiley Dancks
                                            United States Magistrate Judge